**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:25-CR-42 (MTT)** |
| | ) | |
| **WAYNE HAFF,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

This Sex Offender Registration and Notification Act ("SORNA") prosecution

presents two novel issues. The first is whether SORNA vests the Attorney General with

authority to promulgate 28 C.F.R. § 72.7(d), which requires a sex offender to notify the

state where the offender resides that the offender will be terminating residence in that

state and commencing residence in another state before moving. The Court resolved

that issue. The answer is yes. *See* ECF 91. The second issue, which the Court now

addresses, is whether 18 U.S.C. § 2250(a)'s interstate travel element can be satisfied

by travel occurring years before and totally unrelated to the conduct giving rise to the

alleged SORNA violation. The answer is no.

## I.  BACKGROUND

In 1990, Defendant Wayne Haff was convicted of a sex offense in Wisconsin,

requiring him to register under SORNA. ECF 49 at 2. At some point, probably around

2019, after Haff's Wisconsin conviction and after SORNA's enactment, Haff moved to

Georgia. ECF 41 at 4; 105 at 2. The Government alleges that Haff registered as a sex

offender in Georgia, as required by SORNA, and that he complied with registration

requirements from 2019 to 2025. *Id.* at 4–5; *see also* ECF 49 at 2. After Haff moved to

Georgia, he pleaded guilty to multiple drug-related charges. On April 3, 2025, Haff was released from prison. ECF 41 at 5. Rather than reporting to probation authorities, Haff fled from Georgia to Pennsylvania.[1] *Id.* at 5. There, Haff claims he attempted to comply with SORNA by registering with Pennsylvania authorities, but they told him he did not need to register. ECF 49 at 2–3; 68 at 3; 68-1. There is evidence supporting that claim apart from Haff and his witnesses—Pennsylvania authorities confirmed in writing that Haff did not have to register.[2] ECF 68-1. That was wrong.[3] Haff was required to register his new Pennsylvania residence. On September 11, 2025, Haff was indicted in the Middle District of Georgia for failing to register in Pennsylvania as required by SORNA.[4]

The initial indictment charged that "from on or about April 10, 2025, and continuing to on or about May 8, 2025," Haff "traveled in interstate and foreign commerce, and knowingly failed to register as a sex offender" as required by SORNA. ECF 1. Then, on November 18, 2025, the Government superseded the indictment. ECF 31. The superseding indictment charges that "from on or about April 3, 2025, and continuing to on or about May 8, 2025," Haff "traveled in interstate and foreign commerce, and knowingly failed to register and *update* a registration as a sex offender" as required by SORNA. *Id.* at 1 (emphasis added). Thus, the superseding indictment extends the date of the alleged offense back to April 3, the day Haff was released from prison, and alleges that Haff failed to "update a registration" as required by SORNA.

---

[1] Georgia authorities are prosecuting Haff for that alleged offense.

[2] As an affirmative defense, Haff relies on his attempted registration and on statements by Pennsylvania authorities that he did not need to register. *See* 18 U.S.C. § 2250(c).

[3] Haff may have known that it was wrong. When told he did not have to register in Pennsylvania, Haff claims he told Wisconsin authorities that he had moved to Pennsylvania. ECF 68 at 3.

[4] Apparently, federal prosecutors in Pennsylvania elected not to prosecute Haff for a SORNA violation.

These changes reflect the Government's new theory that Haff not only violated SORNA by failing to register in Pennsylvania, but also by failing to inform Georgia authorities of his intent to terminate his Georgia residence and move to Pennsylvania.[5] In other words, the Government seeks to prosecute Haff under what the Court and the parties refer to as a failure to register in Pennsylvania theory and a failure to update in Georgia theory.

The failure to register theory is firmly grounded in SORNA's text. SORNA requires a sex offender to "not later than 3 business days after each change of . . . residence" notify at least one jurisdiction where the offender "resides," "is an employee," or "is a student" of the change. 34 U.S.C. § 20913(a), (c). Thus, pursuant to SORNA, Haff was required to notify Pennsylvania of his change in residence within three business days after moving to Pennsylvania.[6] 34 U.S.C. § 20913(a), (c).

The failure to update theory comes from a recent regulation promulgated by the Attorney General pursuant to SORNA, 28 C.F.R. § 72.7(d).[7] Section 72.7(d) requires a sex offender "residing in a jurisdiction" to "inform that jurisdiction . . . if the sex offender will be commencing residence . . . in another jurisdiction" before "any termination of

---

[5] Because Haff absconded immediately upon his release from prison, it is not clear that he had a Georgia residence, but that is not now at issue.

[6] It appears that Pennsylvania is the only "jurisdiction involved" where Haff could have registered pursuant to 34 U.S.C. § 20913(a). Haff's registration with Wisconsin authorities may support his defense that he attempted to comply with this registration obligation, but Wisconsin is not an involved jurisdiction.

[7] SORNA does not textually require pre-departure notification for domestic changes of residence on its own. *See* 34 U.S.C. §§ 20913, 20914; *Nichols v. United States*, 578 U.S. 104, 110 (2016). At the first of many pretrial conferences in this case, the Court pressed the Government about its basis for asserting that SORNA required Haff to notify Georgia of his departure. ECF 42 at 6:15–20, 7:13–18, 8:6–23, 10:7–11–3; 12:17–22; 16:2–19, 19:8–21. The Government responded by addressing venue. *Id.* at 6:21–8:17. After the Court explained repeatedly that venue was not at issue, the Government eventually identified 28 C.F.R. § 72.7(d) as the basis for asserting that Haff violated SORNA by failing to update his registration in Georgia. *Id.* at 12:1–11.

residence in that jurisdiction and prior to commencing residence . . . in the other jurisdiction." 28 C.F.R. § 72.7(d)(1). It also provides that a sex offender "who will be terminating residence . . . in a jurisdiction must so inform that jurisdiction . . . prior to the termination of residence." *Id.* § 72.7(d)(2). Thus, § 72.7(d) required Haff to notify Georgia that he was terminating his residence there and commencing residence in Pennsylvania before doing so.

Haff challenged the failure to update theory, arguing first that SORNA does not textually empower the Attorney General to promulgate 28 C.F.R. § 72.7(d).[8] ECF 30 at 5–6; 49; 88. After two rounds of briefing,[9] the Court ruled that SORNA authorizes the Attorney General to promulgate the regulation. ECF 91. Although an earlier version of SORNA did not authorize § 72.7(d), today, 34 U.S.C. § 20914(a)(8) and (c) clearly authorize the Attorney General to specify what information sex offenders shall include in the sex offender registry and the time and manner in which that information must be provided, which is exactly what § 72.7(d) does.[10] *See* 34 U.S.C. § 20914(a)(8), (c). In so holding, the Court was careful to distinguish between what SORNA requires and the

---

[8] Haff did not challenge § 72.7(d) under the non-delegation doctrine. Rather, Haff argued § 72.7(d) conflicts with SORNA's plain language and the Supreme Court's decision in *Nichols*, 578 U.S. 104. *See* ECF 49; 88. In other words, Haff argued SORNA does not authorize the Attorney General to promulgate § 72.7(d).

[9] The Court convened many pretrial conferences and hearings over the course of nine months. ECF 42; 85; 86; 102; 114; 115; 117. Much time was expended by the parties and the Court in an attempt to understand the Government's evolving theories and the bases for those theories. Then, Haff's fourth trial setting was continued just before jury selection because of his medical condition. ECF 116. Before this order, the Government has raised no procedural objections to the two challenges raised by Haff. The parties have fully addressed both issues on the merits.

[10] 34 U.S.C. § 20914(a)(8) requires sex offenders to provide, in addition to information specified in the statute, "[a]ny other information required by the Attorney General." Section 20914(c), "[t]ime and manner," provides: "A sex offender shall provide and update information required under subsection (a) . . . in conformity with any time and manner requirements prescribed by the Attorney General." *Id.* § 20914(c).

statute imposing criminal liability for failing to comply with SORNA's requirements, 18 U.S.C. § 2250(a).[11] ECF 91 at 9–10.

Having lost that round, Haff then argued that § 2250(a)'s travel element is satisfied only by travel preceding and having some nexus to a failure to update. To show criminal liability for a SORNA violation, the Government must satisfy 18 U.S.C. § 2250(a), which provides:

(a) In general.—Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

---

[11] The Court did not directly address 18 U.S.C. § 2250(a)'s travel element in its order on § 72.7(d):

To be sure, the Government must prove all elements of 18 U.S.C. § 2250(a) for a jury to find Haff guilty, including whether Haff traveled "in interstate or foreign commerce." 18 U.S.C. § 2250(a)(2)(B). The question presently before the Court is whether SORNA authorizes the Attorney General to promulgate 28 C.F.R. § 72.7(d). It plainly does. Whether the Government can establish an interstate commerce nexus to Haff's alleged failure to comply with a pre-departure update requirement is another question, and it is not yet before the Court.

ECF 91 at 10.

The Court's prior order addressed element three of § 2250(a), whether a failure to comply with § 72.7(d) constitutes a failure to "update a registration as required by [SORNA]." 18 U.S.C. § 2250(a)(3). Haff's new argument implicates element two. Now the Court addresses whether § 2250(a) requires proof that a state sex offender's travel preceded and had some connection to the failure to update a registration.

Haff's new argument is based on established law requiring the Government to prove the elements of § 2250(a) sequentially. ECF 101 at 2. At the third pretrial conference, the Government agreed that § 2250(a)'s elements are sequential. *See also* ECF 105 at 1–6; *see Carr v. United States*, 560 U.S. 438, 446 (2010); *United States v. Beasley*, 636 F.3d 1327, 1329 (11th Cir. 2011) ("[Section 2250(a)'s] three elements must be met in sequence."). But as the Government admits, its failure to update theory requires proof that Haff failed to notify Georgia authorities of his intent to terminate his residence in Georgia *before* his move to Pennsylvania. Thus, because Haff traveled from Georgia to Pennsylvania *after* his alleged failure to update, the Government does not contend Haff's move to Pennsylvania satisfies § 2250(a)'s travel element.[12] Instead, the Government argues that Haff's travel from Wisconsin to Georgia, years before Haff failed to update, satisfies that travel element. Haff responds that some nexus between his interstate travel and the alleged offense is required to satisfy § 2250(a), and that Haff's travel from Wisconsin to Georgia, which has nothing to do with the alleged failure to update in Georgia, is too far removed. ECF 109 at 1–7. For the following reasons, the Court agrees that § 2250(a) requires proof that Haff traveled in interstate commerce

---

[12] Of course, Haff's travel to Pennsylvania can satisfy § 2250(a) with respect to his failure to register in Pennsylvania.

prior to failing to update his registration in Georgia and that the travel has some nexus to his failure to update.

## II. STANDARD

"The starting point for statutory interpretation is the language of the statute." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). "[W]here 'the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.'" *United States v. Pirela Pirela*, 809 F.3d 1195, 1199 (11th Cir. 2015) (quoting *United States v. Browne,* 505 F.3d 1229, 1250 (11th Cir. 2007)).

## III. DISCUSSION

The Government contends that § 2250(a)'s travel element is satisfied if, after a convicted sex offender becomes subject to SORNA, he travels in interstate commerce and, at any point thereafter, fails to comply with SORNA's registration and updating requirements. ECF 105 at 5. Thus, the Government contends, Haff's travel from Wisconsin to Georgia satisfies § 2250(a)(2)(B)'s interstate travel element simply because it occurred after Haff became a convicted sex offender subject to SORNA and before he failed to update his Georgia registration. *Id.* The Government cites no authority to support its claim.[13] *See* ECF 105. However, the Supreme Court spoke firmly on the issue in *Carr*, and made clear that some nexus between the interstate travel

---

[13] At the third pretrial conference, the Court asked the Government whether it had any authority in support of this theory. The Government requested leave to file a brief on the issue, which the Court granted. But the Government's brief did not contain any authority addressing the requirement, or lack thereof, of a nexus between the travel and the alleged failure to register. ECF 105. Instead, the Government cited *Carr*, 560 U.S. 438, a case cutting against the Government's theory as explained in this order; *United States v. Beasley*, 636 F.3d 1327 (11th Cir. 2011), a case applying *Carr*; and *United States v. Whitlow*, 714 F.3d 41 (1st Cir. 2013), a case where a convicted sex offender traveled in interstate commerce to Massachusetts and failed to register there, conduct within the traditional scope of § 2250(a). ECF 105 at 1–6.

element and a state sex offender's subsequent failure to register or update a

registration is required to satisfy § 2250. 560 U.S. at 445–59.

Carr addressed whether § 2250 applies to state sex offenders whose travel

occurred only before SORNA's effective date. Id. at 444–46. The Court considered the

text, structure, and purpose of § 2250 to conclude that it did not. Id. at 445–59. The

Court explained, and the parties agreed (as they do here), that § 2250's elements must

occur in sequence:

> A sequential reading, the parties recognize, helps to ensure a nexus between a defendant's interstate travel and his failure to register as a sex offender. Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under § 2250 even if they had not left the State after being convicted—an illogical result given the absence of any obvious federal interest in punishing such state offenders.

Id. at 446.[14]

The first element of § 2250 is that a sex offender "is required to register under

[SORNA]." 18 U.S.C. § 2250(a)(1); Carr, 560 U.S. at 445. Consequently, the Supreme

Court held that travel before SORNA's effective date, that is, before a state sex offender

became "subject to SORNA's registration requirements," fails to satisfy § 2250(a). Id. at

447. In doing so, the Court addressed the Government's argument that § 2250(a)(2)

merely provides the jurisdictional basis for imposing criminal liability and that allowing

prosecution of pre-SORNA travelers would ensure that § 2250(a)(2) has "comparable

breadth as applied to both federal and state offenders." Id. at 451.

---

[14] The dissent in Carr "agree[d] with the Court that there is a good argument that § 2250(a) should not be read to apply to such a case, where there is little if any connection between the offender's prior interstate movement and his subsequent failure to register." Carr, 560 U.S. at 469 (Alito, J., dissenting). The dissent differed on the question of whether that violation-connected travel must occur before SORNA's enactment. Id. at 459–62, 469–70.

The Court explained that Congress was not concerned with comparable breadth in enacting § 2250(a). *Id.* at 452. "Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under § 2250, it easily could have adopted language to that effect." *Id.* at 452. Section 2250(a)'s language "indicates that Congress instead chose to handle federal and state sex offenders differently," a reasonable choice given the differing federal interests in federal and state sex offenders. *Id.* at 452. Namely, Congress assigned the Federal Government a "special role in ensuring compliance with SORNA's registration requirements by federal sex offenders" as "persons who typically would have spent time under federal criminal supervision." *Id.* But Congress left to the states the "primary responsibility for supervising and ensuring compliance among state sex offenders" and chose to "subject[] such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach." *Id.* In other words, § 2250 exposes to criminal liability "persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or [state sex offenders] who threaten the efficacy of the statutory scheme by traveling in interstate commerce." *Id.* at 453. Consequently, the Court reasoned, travel is not merely a jurisdictional prerequisite to § 2250(a) liability— it is "an aspect of the harm Congress sought to punish." *Id.*

To illustrate the difference, the Court compared § 2250 to a felon-in-possession statute, which imposed criminal liability on any convicted felon who "possesses in commerce or affecting commerce any firearm." *Id.* at 453–54 (citation modified). Unlike § 2250, the felon-in-possession statute was not aimed at travel as an aspect of the

harm. *Id.* at 454. It was concerned with keeping guns out of the hands of convicted felons, and Congress invoked the full breadth of its Commerce Clause authority to achieve that end. *Id*. In contrast, "[t]he act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also, like the act of possession, the very conduct at which Congress took aim." *Id.*

The reasoning in *Carr*, which is grounded in § 2250's sequence, text, and purpose, compels this Court to reject the Government's theory that "interstate travel that occurs any time after a defendant was subject to SORNA" subjects a sex offender to § 2250(a) liability for *any* subsequent failure to register or update a registration. ECF 105 at 2. That theory reduces § 2250(a)'s travel element to a mere jurisdictional prerequisite, a theory *Carr* soundly rejected. 560 U.S. at 454. Here, Haff's alleged failure to update his registration in Georgia is unrelated to his prior interstate travel. Again, the Government contends that Haff was registered in Georgia and complied with SORNA for years, until he failed to update his registration in Georgia before moving to Pennsylvania. ECF 41 at 4–5. At that point, Haff had not used the channels of interstate commerce to evade a state's reach. After traveling from Wisconsin to Georgia, Haff complied with his registration obligations. *Id.* If travel is more than a jurisdictional prerequisite, then Haff's travel from Wisconsin to Georgia, which has nothing to do with his alleged failure to update his registration in Georgia, fails to satisfy § 2250(a). Like the Supreme Court's hypothetical offender, who traveled before his state conviction but never left the state, there is an "absence of any obvious federal interest in punishing such state offenders." *Id.* at 446.

The Eleventh Circuit has recognized that travel is more than a jurisdictional prerequisite. *See United States v. Kopp*, 778 F.3d 986 (11th Cir. 2015); *United States v. Lewallyn*, 737 F. App'x 471 (11th Cir. 2018). In *Kopp*, the Circuit considered whether venue in a § 2250(a) case is proper in the state from which a state sex offender traveled, in addition to the state where the offender failed to register. 778 F.3d at 988. Applying *Carr*, the Eleventh Circuit held that a state sex offender begins his crime when he commences interstate travel. *Kopp*, 778 F.3d at 989 ("The Supreme Court has explained that '[t]he act of travel by a convicted sex offender may serve as a jurisdictional predicate for [section] 2250, but it is also . . . the very conduct at which Congress took aim.'" (quoting *Carr*, 560 U.S. at 454)). Consequently, venue lies in the state from which the state offender departed.[15] *Id.*; *see also Lewallyn*, 737 F. App'x at 474 ("[T]he Supreme Court in *Carr* identified interstate travel as an 'element' of the crime for state sex offenders, . . . and we did the same in *Kopp*.").

If Congress wanted to extend § 2250(a) to reach intrastate failures to update by state sex offenders, or to change the sequential-proof requirement of § 2250(a), it had the opportunity to do both. In 2016, six years after the Supreme Court's decision in *Carr*, Congress amended 18 U.S.C. § 2250 to address anticipated international travel. *See International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders*, Pub. L. 114–119, § 6(a) 130 Stat. 15 (2016); 18 U.S.C. § 2250(b). As discussed in the Court's previous order addressing 28 C.F.R. § 72.7(d), SORNA did not initially require (or empower the Attorney General to promulgate regulations requiring) sex offenders to notify their

---

[15] Not incidentally, that is why venue is proper in the Middle District of Georgia for the Government's failure to register in Pennsylvania theory.

current jurisdiction of residence of anticipated departures. ECF 91 at 3–6. But this left a gap in the statutory scheme for tracking sex offenders who planned to travel internationally. *See Nichols v. United States*, 578 U.S. 104, 109 (2016). Specifically, sex offenders could go off the SORNA grid simply by moving abroad. That was because, before the 2016 amendment, SORNA did not require sex offenders who moved to a foreign country to notify that country or their prior state of residence of the move. *See id.* In contrast, this gap did not and does not exist in the context of an offender changing residence from one state to another. Sex offenders are required to notify a "jurisdiction involved" of changes in residence, but foreign countries are not "jurisdictions" under SORNA. *See* 34 U.S.C. § 20911(10); *Nichols*, 578 U.S. at 109.

To solve the problem, Congress criminalized the failure to provide information required under SORNA relating to "*intended* travel in foreign commerce." *See* 18 U.S.C. § 2250(b) (emphasis added). To reach intended travel, Congress departed from the text and structure of § 2250(a):

> (b) International travel reporting violations.--Whoever--
>
> (1) is required to register under the Sex Offender Registration and Notification Act (42 U.S.C. 16901 et seq.);
>
> (2) knowingly fails to provide information required by the Sex Offender Registration and Notification Act relating to intended travel in foreign commerce; and
>
> (3) engages or attempts to engage in the intended travel in foreign commerce;
>
> shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(b).

Thus, § 2250(b) does not require that an offender "travels in interstate or foreign commerce" *before* failing to comply with SORNA's registration and updating requirements. *Id.* § 2250(a)(2)(B), (3). Instead, § 2250(b) places the failure to comply

with SORNA as element two and next reaches, in its third element, an offender who "attempts to engage in the intended travel in foreign commerce." *Id.* § 2250(b)(2), (3).

Congress could have amended § 2250(a) to capture similar intrastate failures to update by state offenders moving to another state,[16] but it did not, leaving § 2250(a)'s sequence and scope intact. The reason Congress did not seems obvious. Sex offenders traveling in interstate commerce do not go off the grid. That is because § 2250(a) reaches state sex offenders who, after they become subject to SORNA, travel in interstate commerce and then fail to register with an involved jurisdiction. *Id.* § 2250(a); *Carr*, 560 U.S. at 446. In short, a state sex offender who travels to State A, registers in State A, maintains a registration for years in State A, but subsequently fails to update a registration in State A, falls outside the scope of § 2250(a)'s reach. That is an intrastate failure to update, which Congress left to the states. *Carr*, 560 U.S. at 452–53. And when Congress amended SORNA in 2016, it left that scheme intact.

### IV. CONCLUSION

Section 2250(a)'s travel element is more than a jurisdictional prerequisite. It subjects state sex offenders "to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach." *Carr*, 560 U.S. at 452. Haff's travel from Wisconsin to Georgia, which had nothing to do with his failure to update in Georgia before moving to Pennsylvania, cannot, as a matter of law, satisfy § 2250(a)(2)(B). Because the Government offers nothing more to satisfy § 2250(a)'s travel element, it seems beyond dispute that the Government's failure to

---

[16] Although Congress amended SORNA to vest the Attorney General with authority to promulgate regulations concerning pre-departure notifications, it did not amend § 2250(a). *See* 34 U.S.C. § 20914(a)(8), (c); 18 U.S.C. § 2250(a); ECF 91 at 9–10.

-14-

update theory has no path forward. The parties are **ORDERED** to confer within fourteen days and file a joint report on the status of the case.

**SO ORDERED**, this 21st day of July, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT